UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:08-CV-622-BR

| | |
|---|---|
| EARNEST PARISH, III, ) | |
|         Plaintiff, ) | |
| v. ) | ORDER |
| ) | |
| ) | |
| SIEMENS MEDICAL SOLUTIONS USA, ) | |
| INC., ) | |
|         Defendant. ) | |

This matter is before the court on two motions: (1) a 30 October 2009 motion by defendant for summary judgment; and (2) a 19 November 2009 motion by plaintiff to strike.[1] The motions have been fully briefed and are ripe for disposition.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an African-American man who began his employment with defendant in 1998, working as a Customer Service Representative. (Compl. ¶¶ II, VI; Pl. Dep. at 8-9, 11.) He was promoted on multiple occasions, ultimately to the position of Call Center Supervisor in 2004. (Pl. Dep. at 61-65, 68.) Plaintiff's initial supervisor in that position was Freda Kuhfahl, a Caucasian woman, and in July 2005, he began to report to Chloe Mazuroski, a Caucasian woman. (Id. at 70-71.)

During the time that she supervised plaintiff, Kuhfahl "received ongoing complaints regarding" plaintiff, from both employees that he supervised and others. (Kuhfahl Decl. ¶¶ 4-5.) Kuhfahl "provided ongoing verbal coaching and counseling to" plaintiff to improve his performance.

---

[1] Plaintiff seeks to strike two paragraphs in the declaration of Kelly Walsh on the grounds that they contain inadmissible hearsay. Fed. R. Civ. P. 56(e) states that affidavits submitted in support of or opposition to summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." For the reasons set forth in defendant's memorandum in opposition to the motion to strike, the court concludes that the declaration does not contain inadmissible hearsay and the motion to strike is DENIED.

(Id. ¶ 7.) However, some of the employees plaintiff supervised "never had any problems communicating with [plaintiff] and found him easy to speak with and reach at the office." (Williams Aff. ¶ 6; see also Martin Aff. ¶ 4 ("I found [plaintiff] to be . . . easy to talk with. We generally communicated with one another verbally via telephone or face to face. We did not communicate via email often.").)

Pursuant to defendant's standard company practices, Kuhfahl also completed an evaluation of plaintiff, which (along with the evaluations of other employees) was reviewed by Mazuroski, Kuhfahl, and others at a meeting in August 2005. (Mazuroski Dep. at 93, 117.) As a result of the discussions during that review, defendant (via Mazuroski) placed plaintiff on a Performance Improvement Plan ("PIP") on 23 November 2005. (Pl. Dep. Exh. 12 (PIP).) Mazuroski had been plaintiff's supervisor for "[a]lmost three months" when she placed plaintiff on the PIP. (Mazuroski Dep. at 92.) Prior to placing him on the PIP, Mazuroski had discussed her concerns regarding plaintiff's communication skills with him on several occasions, but had "[never advise[d] [plaintiff] that his communications skills were lacking to the extent that they would lead to him being placed on a PIP[.]" (Id. at 106.)

The PIP highlighted areas for improvement including, among others, communications with employees, training, employee relations and timely resolving customer complaints. (Pl. Dep. Exh. 12 (PIP).) In September 2005, an internal audit revealed deficiencies in employee training records which plaintiff was required to maintain. (Pl. Dep. Exh. 6 (audit notes) at 1.) Plaintiff was instructed to update them by the first of February 2006, but he did not complete the records until March 2006, after at least one additional prompting. (Id. at 2.) In February 2006, plaintiff did not respond to a customer complaint within a timely manner. (Pl. Dep. at 115 & Exh. 14 (customer

2

complaint form and emails to and from Mazuroski).)  Also in the first quarter of 2006, defendant asked Kelly Walsh, a Human Resources Business Partner, "to conduct focus group meetings with the employees who reported to [plaintiff] to assess . . . employee concerns . . . and the perceptions of [plaintiff] among his employees."  (Walsh Decl. ¶¶ 2, 4.)  Among other complaints, employees reported to Walsh that plaintiff did not properly train them or provide enough training and did not follow through with communications to employees.  (Id. ¶ 6b, f.)  Walsh reported her findings to plaintiff and defendant in March 2006.  (Id. ¶ 7.)

In January 2006, plaintiff met with two Human Resources representatives to discuss his concerns regarding Mazuroski.  (Pl. Dep. at 167.)  During the meeting, plaintiff "specifically said that [he] was not wanting to play the race card," but that it appeared to him that Mazuroski was "only singling out those who are black."  (Id. at 167, 170.)  In March 2006, plaintiff applied for another position with defendant, but was not interviewed or considered for the position, which was filled by a Caucasian woman.  (Pl. Aff. ¶ 7.)  The person who made the decision not to interview or hire plaintiff had previously supervised plaintiff and found deficiencies in his performance, and was not aware that plaintiff had made any complaint to Human Resources.  (Blount Decl. ¶¶ 6, 14.)  On 23 March 2006, plaintiff and Mazuroski met to review plaintiff's job performance.  (Mazuroski Decl. ¶ 5.)  Mazuroski allowed plaintiff to choose between being demoted or being given 30 days in which to correct his performance issues or be separated, although she "told [plaintiff] that [he] would not fix it within 30 days."  (Pl. Dep. at 54-55.)  Plaintiff chose the demotion, and was replaced by a Caucasian male.  (Id.; see also Mazuroski Dep. at 121.)

Two employees (both African-American women) that plaintiff supervised perceived that Mazuroski "treated the black employees harsher and differently than the white employees."

3

(Williams Aff. ¶¶ 2, 7; see also Washington Aff. ¶ 15.)  One of those employees complained about perceived racial discrimination by Mazuroski on several occasions to Human Resources,[2] and was demoted by Mazuroski after she filed an EEOC charge.  (Washington Aff. ¶¶ 5-9, 11.)  The other employee believed that Mazuroski "seemed to specifically target [plaintiff], and treated him with disrespect on a daily basis[,]" and heard Mazuroski "make a derogatory comment to a white employee who she thought was 'acting too eth[n]ically[,]'"[3] which the employee "interpreted . . . to mean that she felt this white employee was socializing with the black employees too much." (Williams Aff. ¶ 7.)

During the time period relevant to this action, Mazuroski supervised ten employees, four of whom (including plaintiff) were African-American.  (Mazuroski Dep. at 22-25.)  Mazuroski placed three of the African-American employees (including plaintiff) on PIPs in November 2005; the fourth transferred to a different position which was not under Mazuroski's supervision.  (Id. at 31-33, 39, 44, 92.)  The other two African-American employees who were placed on PIPs at the same time as plaintiff were ultimately also demoted,[4] and – after plaintiff filed his EEOC complaint – replaced by Mazuroski with African-American men.  (Id. at 39, 44; Pl. Dep. at 156-57.)  Mazuroski promoted

---

[2] Specifically, the employee complained about "about an instance when . . . Mazuroski invited each of the white supervisors to lunch but failed to invite any of the black supervisors[,]" an instance when Mazuroski used the phrase "you people" in a way that the employee perceived as having "a racial undertone[,]" and an occasion on which Mazuroski "gave [the employee] an adverse look" after Human Resources had discussed the "you people" comment with Mazuroski.  (Washington Aff. ¶¶ 6-7, 9.)

[3] The affidavit actually states that Mazuroski told the Caucasian employee that he was "'acting too ethically.'" (Williams Aff. ¶ 7.)  In her brief in opposition to the motion for summary judgment, plaintiff's counsel types this statement as "acting 'too ethnically[,]'" (Br. Opp. Mot. Summ. J. at 13), which carries a far more clearly race-related meaning than acting "ethically."  Because the court takes the facts in the light most favorable to plaintiff as the non-movant for summary judgment, the court assumes that the affiant meant to use the word "ethnically."

[4] One of those two employees successfully completed the PIP implemented in November 2005, and was not demoted until 2007, after an unsuccessful second PIP implemented by Mazuroski.  (Pl. Dep. at 29-30; Mazuroski Dep. at 44.)

4

three of the Caucasian employees under her supervision. (Mazuroski Dep. at 27-29.) Mazuroski intended to place one Caucasian employee on a PIP, but he resigned before she did so. (Id. at 54.)

Plaintiff filed an EEOC charge on 10 August 2006, alleging racial discrimination and retaliation. (Pl. Dep., Exh. 2 (8/10/06 EEOC charge).) The EEOC issued a Notice of Right to Sue on 26 September 2008, and plaintiff filed the instant action on 24 December 2008. The complaint contains claims for race discrimination, disparate treatment, and retaliation, all in violation of Title VII and 42 U.S.C. § 1981.[5]

## II. DISCUSSION

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and in which it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; <u>Haavistola v. Community Fire Co. of Rising Sun, Inc.</u>, 6 F.3d 211, 214 (4th Cir. 1993). Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Id. In making this determination, the court draws all permissible inferences from the underlying facts in the light most favorable to the party opposing

---

[5] There are several vague allegations in the complaint which could arguably be construed to encompass additional claims of harassment and/or hostile work environment, as well as state law claims of infliction of emotional distress and/or negligent supervision or retention of employees. (See, e.g., Compl. ¶ X ("plaintiff further contends that he was subjected to harassment, such harassment was unwelcome and was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive and hostile working environment"), ¶ XIV ("Plaintiff alleges that the employer remains liable for its negligent retention of those employees"), ¶ XV ("Plaintiff contends that the Defendant, by and through its agents negligently engaged in conduct and it was reasonably foreseeable that such conduct would cause him to suffer emotional distress").) However, it does not appear that plaintiff is pursuing any such claims, (Br. Opp. Mot. Summ. J. at 10 ("The thrust of the plaintiff's claims against the defendant in the present case stem from the Plaintiff's demotion"), 15 (discussing retaliation claim)), and the court therefore does not address them.

5

the motion. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate ." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

A plaintiff may establish a claim of discrimination or retaliation under either Title VII or 42 U.S.C. § 1981[6] "in either of two ways: (1) by 'using any direct or indirect evidence relevant to and sufficiently probative' of discriminatory purpose or (2) by using the burden-shifting approach outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 . . . (1973)." Belyakov v. Leavitt, 308 Fed. Appx. 720, 726 (4th Cir. 2009) (citing Rhoads v. FDIC, 257 F.3d 373, 391-92 (4th Cir. 2001)).

The burden-shifting scheme as articulated in McDonnell Douglas Corp. requires the plaintiff to establish a *prima facie* case of discriminatory action, which gives rise to a presumption of discrimination. See id. at 802. Establishment of this presumption then shifts the burden to the defendant to produce a legitimate, non-discriminatory reason for its action. See id. at 802-03. If defendant meets this burden of production, the presumption of discrimination vanishes, and the plaintiff must show that the employer's proffered explanation is simply a pretext for intentional discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000). "An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination" or fails to show that the employer's proffered legitimate nondiscriminatory reason is unworthy of belief. Henson v. Ligget Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995); see also

---

[6] Title VII and § 1981 both prohibit discrimination in the workplace on the basis of race. The essential elements of a race discrimination or retaliation claim are identical under both statutes. See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004) (explaining that framework for Title VII claims has also been applied to § 1981 claims); Bryant v. Aiken Regional Medical Centers Inc., 333 F.3d 536, 543 (4th Cir. 2003) (applying identical elements of a retaliation claim under both Title VII and § 1981).

Reeves, 530 U.S. at 143. If "no rational fact-finder could conclude that the action was discriminatory," the plaintiff cannot withstand the defendant's motion for summary judgment. Reeves, 530 U.S. at 148.

B.  Discrimination

"The thrust of the plaintiff's claims against the defendant in the present case stem from the [p]laintiff's demotion from the . . . [s]upervisor position by . . . Mazuroski[] due to his race." (Br. Opp. Mot. Summ. J. at 10.) A *prima facie* case of discriminatory demotion requires a showing that: 1) plaintiff is a member of a protected class; 2) he suffered an adverse employment action; 3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and 4) the position remained open or was filled by similarly qualified applicants outside the protected class. See Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004).

Defendant contends that plaintiff cannot show that he was performing his job duties at a satisfactory level. (Br. Supp. Mot. Summ. J. at 13-14.) As noted above, plaintiff has offered evidence in the form of affidavits of three co-workers and employees he supervised, stating that they found plaintiff easy to communicate with, did not complain about plaintiff to anyone, and thought he was a good manager. However, "it is the perception of the decisionmaker which is relevant[,]" Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007) (quotation, citation and alteration omitted), and plaintiff has offered no evidence that Mazuroski did not genuinely believe plaintiff's job performance to be critically deficient. See also Combs-Burge v. Rumsfeld, 170 Fed. Appx. 856, 863 (4th Cir. 2006) (declarations of "either . . . subordinates or individuals in a completely different job" from the plaintiff "could not provide a useful appraisal of [the plaintiff]'s

7

job performance because . . . there is no indication . . . that these individuals were competent to assess whether [the plaintiff] was meeting the [defendant]'s legitimate expectations").

Plaintiff's additional evidence regarding comments and actions by Mazuroski (such as the "you people" comment and the remark about a Caucasian employee "acting too ethnically") are nothing more than "stray or isolated remarks" that lack any apparent connection to the decision to demote plaintiff. "It is regrettable that any distasteful comments will arise in the workplace, but that cannot mean that the actual decision maker is impugned thereby. It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010) (finding such a nexus where "the [defendant's] corporate culture evinced a very specific yet pervasive aversion to the idea of female Pickup and Delivery drivers"). Therefore, the court concludes that plaintiff has not shown that he was performing his job in a satisfactory manner, nor has he shown that defendant's stated reasons for demoting him were pretext, and summary judgment for defendant on this claim is appropriate.

C. <u>Retaliation</u>

> A plaintiff can prove illegal retaliation under Title VII or § 1981 if he shows that "(1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of [his employer]; and (3) [the employer] took the adverse action because of the protected activity." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001). Once the plaintiff makes this case, the employer can defend itself by producing "evidence of a legitimate, non-discriminatory reason for taking the adverse employment action." Id.

Bryant v. Aiken Regional Medical Centers Inc., 333 F.3d 536, 543 (4th Cir. 2003); see also CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008) (§ 1981 covers retaliation claims based on assertion of rights protected by § 1981). "If the employer sets forth a legitimate, non-retaliatory explanation

8

for the action, the plaintiff then must show that the employer's proffered reasons are pretextual or his claim will fail. More specifically, the plaintiff can prove pretext by showing that the explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of retaliation." Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004) (quotations and alteration in original omitted) (citing Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004)).

Plaintiff did not file his EEOC complaint until after his non-consideration for a position[7] and demotion, and therefore the only protected activity at issue is his January 2006 meeting with Human Resources. Defendant contends that plaintiff did not engage in protected activity because he did not complain of race discrimination during the meeting. (Br. Supp. Mot. Summ. J. at 14-15.) The court disagrees: taking plaintiff's description of that meeting in its entire context from his deposition, it appears that plaintiff sufficiently "conveyed his view that [Mazuroski] discriminated against him." Zhou v. Pittsburg State University, 252 F. Supp. 2d 1194, 1222-23 (D. Kan. 2003) ("employees often do not speak with clarity or precision of lawyers and for reasons of discretion, tact, security or otherwise do not always brazenly lodge direct allegations of discrimination; relevant question is whether employee's communications sufficiently conveyed his or her concern that employer acted in an unlawful discriminatory manner").

However, the court agrees with defendant that plaintiff has failed to show either a causal

---

[7] Defendant contends that the court should not consider this employment action as part of plaintiff's retaliation claim because it "was never included in [p]laintiff's EEOC charge" and was not alleged in the complaint. (Reply Br. Supp. Mot. Summ. J. at 1.) Under Title VII, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). "§ 1981 claims, on the other hand, do not require administrative remedies to be exhausted, so the EEOC charge is irrelevant to § 1981 claims." Johnson v. Portfolio Recovery Associates, LLC, 682 F. Supp. 2d 560, 577 (E.D. Va. 2009). While the court is inclined to agree with defendant, for the reasons discussed *infra*, the court finds any claim for retaliation based on plaintiff's non-consideration for a position to be without merit. The court also assumes without deciding that defendant's refusal to consider plaintiff for the position is an adverse employment action.

connection between his complaint to Human Resources and the adverse employment actions, or to show evidence indicating that defendant's proffered reasons for the adverse employment actions are pretextual. "This conclusion is buttressed by the fact that the evidence showed that" defendant "had placed [plaintiff] in a performance improvement period . . . before []he complained about" Mazuroski to Human Resources. Combs-Burge, 170 Fed. Appx. at 864 (citing Williams v. Cerberonics, 871 F.2d 452, 454, 457 (concluding that an employee could not show that the employer's legitimate reason for the discharge was pretextual because the employer's reason developed before the employee engaged in protected activity)). Because plaintiff has failed to make out a *prima facie* case or to show pretext, the court will dismiss his Title VII/ § 1981 retaliation claim.

Plaintiff has also alleged that he suffered discriminatory retaliation in violation of the North Carolina Equal Employment Practice Act, N.C. Gen. Stat. § 143-422.2. (Br. Opp. Mot. Summ. J. at 15.) Because the court finds that summary judgment is appropriate on plaintiff's Title VII / § 1981 claim, this claim must also be dismissed. See Jones v. Southcorr, L.L.C., 324 F. Supp. 2d 765, 783 (M.D.N.C. 2004) ("The Fourth Circuit Court of Appeals . . . ha[s] consistently held that a plaintiff's failure to demonstrate his discrimination claim under Title VII will also result in dismissal of a North Carolina wrongful-discharge claim arising out of the same facts and circumstances." (citing Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.1995)).

D. <u>Disparate Treatment</u>

In order to establish a *prima facie* case of discrimination based on disparate treatment, a plaintiff must show: (1) that he engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against him

10

were more severe than those enforced against the other person. See Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008). Plaintiff has made absolutely no showing of any evidence on this claim, and the court concludes that summary judgment for defendant is therefore appropriate.

### III.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is ALLOWED, and this action is DISMISSED.

This 18 June 2010.

_____
W. Earl Britt
Senior U.S. District Judge